IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17–cv–00446–RM–KMT

WATERMARK HARVARD SQUARE, LLC a Delaware limited liability company,
WATERMARK HARVARD SQUARE AP, LLC, a Delaware limited liability company,
WATERMARK HARVARD SQUARE OWNER, LLC, a Delaware limited liability company,
WATERMARK RETIREMENT COMMUNITIES, INC., an Arizona corporation,
WATERMARK SERVICES I, LLC, a Delaware limited liability company, and
WATERMARK SERVICES IV, LLC, a Delaware limited liability company,

      Plaintiffs,
v.

WILLIE LEE CALVIN,

      Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case was initiated by way of a complaint filed on February 17, 2017. (*See* Doc. No. 1 [Compl.].) Embedded within the complaint is a petition seeking relief, *inter alia*, to compel arbitration. Defendant filed a response to the complaint on April 21, 2017. (Doc. No. 17 [Resp.]). Two replies were filed on May 5, 2017. Because several parties have since been dismissed through stipulation,[1] only one reply remains relevant—*i.e.*, the reply filed by the Watermark Plaintiffs. (Doc No. 20 [Reply].) No further briefing has been filed.

---

[1] *See* Doc. No. 26: Order of Dismissal as to the Complaint by the Plaintiffs' Emericare, Inc. d/b/a Brookdale Roslyn; Emerical, Inc.; Emericare Countryside Village, Inc.; Emeritus Corporation; Brookdale Senior Living, Inc. ('Brookdale Plaintiffs') and Defendant. Those plaintiffs still in suit are referred to as "Plaintiffs" or "Watermark Plaintiffs."

## INTRODUCTION

This case involves arbitration arising from facts in state court litigation. More specifically, on September 28, 2013, David Calvin—as attorney in fact for Ms. Willie Lee Calvin—signed a Resident Agreement for Ms. Calvin to be admitted to Watermark Harvard Square nursing care facility. This agreement included an arbitration clause ("Arbitration Agreement") (*See* Doc. No. 1, Ex. 2 [Arbitration Agreement]).

During her stay at Watermark Harvard Square, Ms. Calvin suffered injuries which led to her asserting claims in state court for negligence and violations of the Colorado Consumer Protection Act ("CCPA"*).*

In the present case, Plaintiffs seek to compel arbitration and enjoin Defendant from pursuing claims in state court. (*See* Compl. ¶¶31-68.) Plaintiffs contend that the Arbitration Agreement governs disputes between the parties and that the Arbitration Agreement is valid and enforceable under the Federal Arbitration Act ("FAA"). Plaintiffs contend that the state court claims arise out of the services provided to Ms. Calvin by Plaintiffs and, as such, fall squarely within the scope of the Arbitration Agreement—requiring Ms. Calvin to refer her claims to mediation and binding arbitration.

Defendant disputes any notion that her claims are controlled by the Arbitration Agreement and that, *inter alia*, state court is the proper forum to reconcile all claims between the parties.[2]

---

[2] Since Plaintiffs' petition for relief is embedded within the complaint itself, the court will dispose of Doc. Nos. 1, 17 and 20 in this Recommendation.

**ANALYSIS**

Defendant challenges arbitration on two fronts—specifically: (1) Defendant requests that this court abstain from ruling on the complaint and allow the state court to address the arbitration issue, and (2) if the court chooses *not* to abstain, Defendant requests that the complaint still be dismissed since the Arbitration Agreement is unenforceable under state law. Tethered to this second issue is a complex federal preemption analysis.

In short, because abstention is not warranted—and because the Arbitration Agreement is enforceable—the court recommends that the District Judge hold in favor of Plaintiffs on both issues. Given this result, the District Judge should also compel Defendant to pursue her claims in accordance with the Arbitration Agreement and grant any residual relief relevant to same.

*A. Abstention*

Defendant argues abstention in accordance with the doctrine laid out in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

Abstention allows "a federal court ... [to] stay or dismiss a federal suit pending resolution of a parallel state court proceeding." *THI of N.M. at Vida Encantada, LLC v. Lovato*, 848 F. Supp. 2d 1309, 1318 (D.N.M. 2012) (citing *Colo. River.*, 424 U.S. at 817; *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994).[3]

---

[3] The *Colorado River* doctrine is not truly an abstention doctrine, because it is based on considerations of wise judicial administration instead of principles of comity. Its application is limited to actions for coercive relief, such as the compelled arbitration sought here. *Safety Nat'l Cas. Corp. v. Bristol–Myers Squibb Co.*, 214 F.3d 562, 564 (5th Cir. 2000) (noting that compelled arbitration is a form of coercive relief, and applying Colorado River). Courts consistently, however, refer to the exercise of the doctrine as abstention. *See* Eric C. Surette, *When Are Proceedings Parallel so as to Permit Federal Court Abstention Under Colorado River*, 176 A.L.R. Fed. 517 (2011).

Generally "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." *Colo. River*, 424 U.S. at 817. The Supreme Court has emphasized that the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," including in cases involving parallel state litigation. *Id.* Thus, abstention from the exercise of federal jurisdiction is "the exception, not the rule." *Id.* at 813.

The abstention analysis involves a two-step process. In declining jurisdiction, there must *first* be a showing that "the state and federal proceedings are parallel." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). Under Tenth Circuit law, a court will "examine the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings." *Id.* If the cases are *not* parallel, the court must exercise jurisdiction. But if the cases *are* parallel, a *second* step is required—*i.e.*, a court "must . . . determine whether deference to state court proceedings is appropriate." *Id.* at 1082.

To determine deference, the following factors are considered: "(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction." *Id.* Other factors the court may consider include "the vexatious or reactive nature of either the federal or the state action, whether federal law provides the rule of decision, ... the adequacy of the state court action to protect the federal plaintiff's rights, ... [and] whether the party opposing abstention has engaged in impermissible forum shopping." *Id.* (internal citations omitted). The court is to balance all the factors as they apply to this particular case, and "any doubt should be resolved in favor of exercising jurisdiction." *Id.*

### 1. Parallelism of State and Federal Proceedings

Suits are parallel, for purposes of *Colorado River* abstention, if substantially the same parties litigate substantially the same issues in different forums. *Fox*, 16 F.3d at 1081–1082. Put differently, suits are parallel if the state court litigation will be an "adequate vehicle for the complete and prompt resolution of the issue between the parties," such that "the federal court will have nothing further to do in resolving any substantive part of the case." *Id.* at 1081–1082.

Here, Defendant satisfies the first step of the abstention analysis—parallelism. Most of the parties are the same, litigating substantially the same issues. The fact that one of the parties in the state action is not present in the federal action is "inconsequential."[4] *THI of New Mexico at Vida Encantada, LLC v. Archuleta,* No. CIV. 11-0399 BB/ACT, 2012 WL 8169886, at *4 (D.N.M. Jan. 12, 2012) ("Asymmetry of parties is inconsequential especially where the parties are united by identical legal interests."); *see D.L. v. Unified Sch. Dist*. No. 497, 392 F.3d 1223, 1230 (10th Cir. 2004).

More critically, the core claims in each case conform—namely the federal arbitration claim. *Moses H. Cone*, 460 U.S. at 28. Still, Plaintiffs challenge such conformity, contending that the negligence and CCPA claims in the state action purportedly provide points of distinction—creating asymmetry between the claims. But the argument misses the mark. It ignores the fact that the arbitration issue is squarely before the state court *and* the federal court, respectively. Indeed, because the arbitration claim is the only claim before federal court, there is sufficient symmetry for parallelism purposes. *See Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir. 1988) (In determining if suits are parallel, a court looks "not for formal symmetry between the

---

[4] The parties absent in the federal suit are the administrators of the nursing home. Plaintiffs' have not disputed that they would have near identical interests to the parties to suit. (*See* Resp. at 8.)

two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.").

In sum, because the threshold issue favors Defendant, the Court must next turn to the *Colorado River* factors to assess whether deference and abstention are warranted.

### *2. Colorado River Factors – Exceptional Circumstances*

Holding that the claims are parallel at step one does not win the day for Defendant. The court must proceed to the second step and consider a non-exclusive list of factors to decide if "exceptional circumstances" exist to warrant abstention. *Fox*, 16 F.3d at 1082. No factor is dispositive, and the weight given to each factor is left to the court's discretion. *Id.*

As an initial matter, and to support the second step of the analysis, Defendant placed much emphasis on a Sixth Circuit decision: *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388, 391 (6th Cir. 2017). While this case supports Defendant's position on the issue of parallelism, it is found wanting with respect to the step two of the abstention analysis. Significantly, in *VanArsdale* there is a critical factual distinction that undercuts Defendant's position—*i.e.*, in *VanArsdale*, the state court disposed of the arbitration issue in advance of the federal court litigation. In this case, however, the arbitration issue is still in play—neither the state, nor federal forum has yet to make a decision on the Arbitration Agreement. With regard to several factors (*e.g.*, third/fourth), the distinction is telling.

Turning to the *first factor*, the parties are in fierce agreement that that there is no property in suit. This factor has no bearing on the analysis.

The *second factor*—the inconvenience of the federal forum—clearly cuts in favor of Plaintiffs since the distance between state and federal courts is less than two miles. Defendant

concedes as much; yet, at the same time, counters that the state court "can provide quicker resolution to the arbitration issue" than a federal court. (Resp. at 6.) This argument is rejected—lacking relevancy. More so, there is nothing offered by way of statistical data to support the assertion. The second factor weighs in favor of Plaintiffs.

The *third factor*[5]—the desirability of avoiding piecemeal litigation—is contested by both parties. Courts have stated that piecemeal litigation is generally appropriate to enforce arbitration rights under the FAA "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *see also Moses H. Cone*, 460 U.S. at 20 (observing that the FAA "requires piecemeal resolution when necessary to give effect to an arbitration agreement").[6]

---

[5] A substantial factor in the *Colorado River* analysis is whether there are special concerns associated with resolving the issues in a piecemeal fashion via parallel proceedings. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). Any case in which *Colorado River* is implicated will inevitably involve the possibility of "conflicting results, piecemeal litigation, and some duplication of judicial efforts," which are the "unavoidable price of preserving access to . . . federal relief." *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991) (alteration in original) (internal quotation marks omitted).

[6] Factor three overlaps, in part, with factor five (governing law). Regarding the latter, Defendant argues that Colorado law applies to the Arbitration Agreement and that the FAA is inapplicable, hence federal policies would not be relevant to the abstention analysis are not relevant. (*See* Resp. at 7.) But this analysis is deficient. No effort is made by Defendant to deal with (let alone acknowledge) the strong default presumption that the FAA, not state law, supplies the rules for arbitration. *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir.), opinion amended on denial of reh'g, 289 F.3d 615 (9th Cir. 2002) (citing *Volt*, 489 U.S. at 479; *Mastrobuono*, 514 U.S. at 61-62; *Roadway Package Sys. v. Kayser*, 257 F.3d 287, 293 (3d Cir. 2001) (stating that parties must evidence a "clear intent" to incorporate state law rules for arbitration)). To overcome that presumption, parties to an "arbitration agreement must evidence a 'clear intent' to incorporate state law rules for arbitration." *Golden v. O'Melveny & Meyers LLP*, No. CV-148725-CASAGRX, 2016 WL 4168853, at *12 (C.D. Cal. Aug. 3, 2016) (quotations omitted).

To the extent that the state court's involvement in this case creates piecemeal litigation (if at all), the case law tends to show that this is of little significance—and that the federal policies underlying the FAA should be afforded much weight. *Cf. Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 308 (3d Cir. 2009) (abrogated on other grounds).

Defendant fails to address the strong, federal undercurrent that the FFA imposes on the third factor. Indeed, despite stating that the third factor is "paramount," Defendant's analysis is given short shrift. (*See* Resp. at 7.) No more than three lines are dedicated to Defendant's position, largely relying on the Sixth Circuit's *VanArsdale* decision to do the heavy lifting. 676 F. App'x at 391. But, as addressed earlier, *VanArsdale* is distinct from the instant case. There, the state court had *already* adjudicated the arbitration clause before arbitration issue was before the federal court. To then have the federal court to adjudicate the arbitration issue would have been duplicative. *Id.* Such duplicity typifies piecemeal litigation. By contrast, here, the state court action has not yet adjudicated the arbitration issue. That action has been stayed—only reinforcing a lack of duplicity in this case *vis-à-vis VanArsdale,* and the general need to exercise federal jurisdiction over the FFA claim. The view is fortified by the fact that there is nothing in the instant dispute that evinces an important rationale, policy or legislative preference for resolving the arbitration issue in state proceedings.

In sum, factor three fails to provide the impetus Defendant had hoped for. The facts in suit are distinguishable from *VanArsdale* and counsel against abstention. [7]

---

Because Defendant does not point to any provisions in the Arbitration Agreement to support a clear intent, the FFA is controlling law. This dispels any ambiguity on this issue.

[7] The instant case, too, is distinguishable from *Colorado River* where piecemeal litigation was a genuine concern involving multi-state regulation of water rights in the Southwest, where water

The *fourth factor*—the order in which the courts obtained jurisdiction—is nuanced. The factor is not a strict first-past-the-post analysis; rather, priority is measured "in terms of how much progress has been made in the two actions." *Cone Mem'l Hosp.*, 460 U.S. at 21-22. Pending such progress, the federal court should exercise jurisdiction where, at the time a federal court rules on abstention, "*no substantial proceedings ... ha[ve] taken place*" in state court. (emphasis added.)

Here, a mere two months separate the state and federal suits. The temporal difference is marginal. Having progressed in equivalent amounts, both cases are in their relative infancy. This is borne out in circumstances where the parties to the state court action have not completed any discovery, nor has there been a case management order issued. Instead, the state proceeding has been stayed pending adjudication of the Arbitration Agreement. Defendant's argument—in which she contends that the state action was the first filed and that this weighs heavily in favor of abstention—lacks merit.

Consistent with the case law, being first-past-the -post holds little (if any) weight when it comes to analyzing the fourth factor. As such, because there have been no *substantial proceedings* in the state court, this factor counsels against abstention.

The *fifth factor*—the source of the governing law—is neutral. Plaintiffs correctly point out that the FAA governs the Arbitration Agreement as a whole, "so that any analysis of the agreement will inevitably involve federal law to at least some degree." *VanArsdale*, 676 F. App'x 388, 391. Nonetheless, when determining the enforceability of the Arbitration

---

remains scarce, such that inconsistent dispositions of those rights could trigger further litigation. *See Colo. River*, 424 U.S. 819–20 ("The clear federal policy evinced by [the McCarran Amendment] is the avoidance of piecemeal adjudication of water rights in a river system.").

Agreement, this court is bound to apply the state law of contract formation. *Id.* As a result, "neither state nor federal law clearly predominates in this case." *Id.* Given that the sources of law are mixed, this factor neither favors nor disfavors abstention.

The *sixth factor*—adequacy of the state court action to protect the federal Plaintiffs' rights—is a factor not pertinent to the calculus in this case. If this factor were afforded any weight, the court subscribes to Plaintiffs' argument that the sixth factor is, by its very nature, a factor that does not weigh in favor of abstention. *Stewart v. W. Heritage Ins. Co.*, 438 F. 3d 488, 493 (5th Cir. 2006) ("The sixth factor is either a neutral factor or one that weighs against abstention."). Even if this view is wrong, there is nothing in Defendant's briefing to warrant abstention.

With regard to the *seventh factor*, there is no evidence here that Plaintiffs have acted in bad faith or vexatious manner. Instead, Plaintiffs have sought resolution of a federal issue (under the FAA) in a federal court. *Cf. Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991) ("the FAA provides a federal cause of action which calls upon the court to decide whether the dispute is covered by a written arbitration agreement."). This factor counsels against abstention.

Finally, an *eighth factor*—whether the party opposing abstention has engaged in impermissible forum shopping—is a factor not expressly referenced in *Colorado River*. It has, however, been considered by the Tenth Circuit. *See Fox*, 16 F.3d at 1082 (citing *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370–71 (9th Cir. 1990)). Here, and for reasons similar to the previous factor, there is nothing vexatious about Plaintiffs seeking adjudication of the federal FAA claim in federal court. Nor can forum shopping be detected. Like the last factor, a similar result is yielded here.

### 3. Balancing of Factors

Because there are no factors supporting Defendant's position in favor of abstention, and since there are several factors that are neutral (or point the other way), the court has little choice but to exercise jurisdiction. Indeed, even if all the factors had been neutral or evenly distributed, "any doubt in the application and balancing of the factors 'should be resolved in favor of exercising jurisdiction.'" *Potter/Ortiz, LLC*, No. CIV 13–1043 at *10 (quoting *Fox*, 16 F.3d at 1082); *see also Colo. River*, 424 U.S. 819–21 ("only the clearest of justifications will warrant dismissal").[8]

### B. Enforceability of Arbitration Agreements

The enforceability issue is complex. Admittedly, the parties have not provided the court with a clear elucidation of how the analysis should play out. At times, the parties' briefs have blown past each other. But to boil it down: enforceability of the Arbitration Agreement is largely dictated by federal preemption principles—*i.e.*, whether Colorado's Health Care Availability Act ("HCAA") is preempted by the FAA. For instance, if the court holds that there is no preemption, Defendant argues that the Arbitration Agreement does not comply with provisions of the Colorado's HCAA—rendering the Arbitration Agreement invalid and unenforceable.[9]

---

[8] The exceptional circumstances in *Colorado River* were: (a) the absence of any proceedings in the federal district court, other than the filing of the complaint; (b) the extensive involvement of state water rights occasioned by this suit naming 1,000 defendants; (c) the 300 mile distance between the district court in Denver and the state court; and (d) the existing participation by the Government in state court proceedings in water divisions. *See Colo. River*, 424 U.S. 819–21. These factors are clearly not apparent in the present case, reinforcing the case against Defendant's position.

[9] Section 13–64–403(3) & (4), Colo. Rev. Stat, of HCAA sets forth specific language that must be included in arbitration agreements relating to medical services. It is the lack of this language that, according to Defendant, makes the Arbitration Agreement invalid.

If, however, there is preemption—and the HCAA is deemed inconsistent with the FAA—Plaintiffs argue that the Arbitration Agreement is valid and enforceable (because the state law has been displaced by federal law) and the court can compel arbitration consistent with the FAA.

As an initial matter, it is important to recall that the "FAA creates a separate federal cause of action for enforcement of agreements within its scope." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 101 (4th Cir. 1991). Thus, disposition of any FAA claim is federal in nature and creates tension with any state law that falls within the scope of the FAA's provisions and policies. Relevantly, here, the U.S. Supreme Court has made clear that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: the conflicting rule is displaced by the FAA." *AT & T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1749 (2011); *see also Marmet HealthCare Center, Inc. v. Brown*, 132 S.Ct. 1201 (2012). State and federal courts "must enforce the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.*, with respect to all arbitration agreements covered by that statute." *Marmet*, 132 S. Ct. at 1202.

Notwithstanding the above, Defendant argues that the HCAA regulates the Arbitration Agreement. Defendant contends that § 2 of the FAA does not preempt the HCAA because of the McCarran-Ferguson Act—proscribing:

> No Act of Congress shall be construed to invalidate impair or supersede any law enacted by any State for the purpose of regulating the business of insurance … unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012(b). In other words, and in matters relating to insurance, the McCarran-Ferguson Act provides that state insurance law is the supreme law of the land. Thus, where state insurance regulations conflict with federal statutes of general applicability, then McCarran-Ferguson gives rise to 'reverse' preemption—where state law actually trumps federal law.

12

Based on a reverse preemption theory, Defendant's argument is twofold—*i.e.*, (1) that the McCarran-Ferguson Act applies in this case, and (2) that the McCarran-Ferguson Act provides a shield from FAA preemption. Tellingly, Defendant must succeed on both points before the court can even address the HCAA provisions which, according to Defendant, would invalidate the Arbitration Agreement.

As to point (1), Plaintiff relies on *Allen v. Pacheco*, 71 P.3d 375 (Colo. 2003). There, the majority concluded that the arbitration provisions of the HCAA—regulating arbitration agreements—qualified as a statute enacted for the purpose of regulating the business of insurance "to the extent that [the provisions] do specifically regulate the relationship between a ***health insurer and its policyholder*** ... and... do further the interests of policyholders by ensuring adequate notice of arbitration agreements." *Id.* (emphasis added.)

Although, facially, *Allen* seems partially on point—it is not. The analysis of U.S. District Court Judge Lewis T. Babcock in *Espinosa* is instructive (and more relevant). *See Espinosa v. Nexion Health, Inc.*, No. 14-CV-00752-LTB-MEH, 2014 WL 2781139, at \*2 (D. Colo. June 19, 2014). There, Judge Babcock squarely addressed *Allen vis-à-vis* McCarran-Ferguson Act, noting as a threshold issue that the court was not bound by the *Allen* holding because the decision "principally concerned . . . interpretation of federal law." *Id.*

Here, and given the strong similarities between this case and *Espinosa* (addressing the same state and federal statutes), the court agrees with Judge Babcock's holding that *Allen* is not binding as a matter of federal precedent. *Id.*; *see also Society for Savings v. Bowers*, 349 U.S. 143, 151 (1955) ("Where a federal right is concerned we are not bound by the characterization

given to a state tax by state courts."). The court also subscribes to Judge Babcock's view "that there are compelling reasons *not* to apply the chief holding in Allen"—relevantly stating:

> The arbitration agreement at issue in Allen was contained in an agreement with a health maintenance organization. As recognized by the majority, the relationship between an HMO medical service provider and patient is the relationship between a medical insurer and insured. In contrast, ***the Arbitration Agreement in this case is wholly unrelated to the business of insurance***. The majority's conclusion that the McCarran–Ferguson Act operates to reverse-preempt the FAA is therefore less persuasive under the circumstances of this case since Colorado's right to regulate insurance would not be impacted in any way by the FAA's preemption of § 13–64–403(3) & (4) of the CHCAA.

*Id.* (emphasis added). In other words, McCarran-Ferguson did not apply in *Espinosa* because the agreement in *Allen* was contained within a contract of insurance between a Health Maintenance Organization ("HMO") and its policyholder; while the agreement in *Espinosa* was between the resident and the private healthcare facility—being "wholly unrelated to the business of insurance." *Id.*

Just like *Espinosa*, the Arbitration Agreement here is between a resident and a private healthcare facility. Because neither of the parties to the Arbitration Agreement are insurance companies, the McCarran-Ferguson Act does not apply. Reverse preemption plays no role in the analysis. State law does not trump federal law: the FAA is controlling.

In sum, (1) the McCarran-Ferguson Act does not apply, and (2) the McCarran-Ferguson Act cannot afford Defendant a shield from federal preemption of the HCAA. It further follows that because the HCAA is preempted, Defendant cannot rely on its provisions to invalidate the Arbitration Agreement. It is, therefore, valid and enforceable.[10]

---

[10] Defendant emphasizes *Fischer v. Colorado Health Care, LLC*, --- P.3d ---, 2016 WL 4699115 (Colo. App. Sept. 8, 2016). In *Fischer,* the court never addressed preemption of the HCAA by the FAA. Irrespective, because of the *Espinosa* and *Allen*, *supra*, *Fischer* is redundant.

14

## C. Motion to Compel Arbitration

Having resolved the abstention and enforceability issues, one further issue remains—*i.e.*, whether the court should compel arbitration. Since the Arbitration Agreement is valid, the court finds no reason not to grant such relief. This is consistent with section 2 of the FAA, which requires judicial enforcement of arbitration agreements as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Section 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone*., 460 U.S. at 24.

For completeness—and because Plaintiffs have briefed the issue (Defendant has not)—the court notes that other circuits have engaged in a four-step analysis when considering motions to compel arbitration. *See Brookdale Senior Living, Inc. v. Stacy*, 27 F.Supp.3d 776 (E.D. Ky. 2014) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *see also Brookdale Senior Living, Inc. v. Walker*, 2016 WL 1255722 (E.D. Ky. 2016); *Brookdale Senior Living, Inc. v. Hibbard*, 2014 WL 2548117 (E.D. Ky. 2014).

The *first* step is to "determine whether the parties agreed to arbitrate." *Stout*, 228 F.3d at 714. If so, then the *second* step is to consider the scope of the agreement. *Id. Third*, "if federal statutory claims are asserted, [the court] must consider whether Congress intended those claims to be nonarbitrable." *Id.* Finally, "if the court concludes that some, but not all, of the claims in

15

the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Id.*

Here, there was clearly an agreement between Defendant and the Plaintiffs to arbitrate her claims. In her Response, Defendant does not dispute that (1) the Arbitration Agreement qualifies as a contract within the meaning of the FAA; (2) the Arbitration Agreement is valid, irrevocable, and enforceable pursuant to 9 U.S.C. § 2 (save for the preemption arguments, which have been addressed *supra*); (3) the Arbitration Agreement was signed by David Calvin as attorney in fact for Willie Lee Calvin or that Mr. Calvin had authority to sign the agreement on Ms. Calvin's behalf; (4) Ms. Calvin's claims in the state court action are wholly within the scope of the Arbitration Agreement, which covers any "dispute, difference, or disagreement" that "should arise with respect to this [Arbitration] Agreement, and the meaning and construction hereof." *See Arbitration Agreement* at 7.

Each of the conditions to compel arbitration has been met. And because Defendant has refused to submit her claims to mediation and binding arbitration as required by the Arbitration Agreement, the court recommends entering an Order directing the parties to do so and enjoin Defendant from further pursuing the underlying state court litigation.

## CONCLUSION

In sum, because abstention is not warranted—and because the Arbitration Agreement is valid and enforceable—the Court recommends finding in favor of Plaintiffs on both issues.

**WHEREFORE**, for the foregoing reasons, this court

**RECOMMENDS** that:

(1) Plaintiff's petition to compel arbitration be GRANTED;

(2) Defendant be ENJOINED from further pursuing the underlying Denver District Court action: *Calvin v. Watermark Order*, 2016-CV-34673;

(3) The federal case be stayed;

(4) The court direct the Clerk of the Court to ADMINISTRATIVELY CLOSE the case pursuant to D.C.COLO.LCivR 41.2, pending completion of arbitration pursuant to the Parties' Arbitration Agreement; and

(5) The court, following any final order of arbitration, permit the Parties to move to re-open the case upon good cause, including to enforce the arbitration award.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (stating that a

district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (stating that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (holding that cross-claimant had waived its right to appeal those portions of the ruling by failing to object to certain portions of the magistrate judge's order); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (holding that plaintiffs waived their right to appeal the magistrate judge's ruling by their failure to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (stating that firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of March, 2018.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge